FITZHUGH v. STATE.

4349                                179 S. W. 2d 173

Opinion delivered April 10, 1944.

118

*Joe W. McCoy,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

HOLT, J. July 29, 1943, appellant, Chester Fitzhugh, was convicted of the crime of involuntary manslaughter, and the jury fixed his punishment at nine months in the state penitentiary. From the judgment comes this appeal.

For reversal, appellant contends that the trial court erred in giving the state's instruction No. 8; in giving appellant's instruction No. 2 after modifying same, and in refusing to give appellant's instructions Nos. 3 and No. 4.

A brief summary of the material facts most favorable to the state is as follows:

At about 12 o'clock on the night of June 17, 1943, appellant's one-half ton Ford truck collided with a Chevrolet automobile driven by J. C. Forthman on paved highway No. 67, south of Malvern, in front of Central High School. The collision was discovered by employees from a nearby aluminum plant. Upon investigation, these employees found that the cars had collided head on, on the left side of the highway and came to rest just off the left side of the pavement. The Forthman car was going north, and the Ford truck was going south and was on the wrong side of the highway when the collision occurred. Appellant was found on the right side of the front

seat of the truck seemingly in a stupor or drunken condition. Several empty beer bottles were in the truck. Pinned under the wreckage of the Chevrolet car was discovered Mr. Forthman, seriously injured. With considerable effort they extricated him and laid him temporarily on the ground near the pavement. Forthman died from his injuries about one hour later at a hospital. Appellant got out of his car, staggered some and upon seeing Mr. Forthman lying on the ground said: "This has got me." Frank Ault, deputy sheriff, who reached the scene shortly after the collision occurred, testified that the beer bottles in appellant's truck smelled fresh. He did not think appellant was as drunk as he acted. On questioning appellant at the sheriff's office some three or four hours after the collision, appellant said that he had not seen Clarence Davis since the day before.

Appellant's contention was that he was drunk at the time of the collision and remembered nothing about it, that he was not driving his truck at the time, but that Clarence Davis was driving. Appellant admitted that the truck belonged to him and that he was riding on the front seat at the time of the collision. Clarence Davis denied being with appellant or that he, Davis, was driving the truck when the collision occurred.

Instruction No. 8, about which appellant complains, is as follows: "You are instructed that even though you find from the evidence in this case that the defendant, Chester Fitzhugh, was not the driver of the truck mentioned in evidence at the time of the collision mentioned, but do find beyond a reasonable doubt that he was standing by, aiding and abetting in any unlawful operation of the said truck, and that as a result of such unlawful operation, if any, the death of J. C. Forthman was caused, then you are instructed to find the defendant guilty." We think this was a correct instruction on appellant's theory of the case and the facts presented.

Under the criminal laws of this state (§§ 2934 and 2935 of Pope's Digest), any one who stands by, aids abets or assists another in the perpetration of a crime is deemed to be an accessory and shall be punished as principal

offender. Section 3276 of Pope's Digest provides: ''The distinction between principals and accessories before the fact is hereby abolished, and all accessories before the fact shall be deemed principals and punished as such.''

Appellant argues, however, that ''Involuntary manslaughter is a killing without any premeditation, deliberation, malice aforethought, or design, and certainly no man could stand by, aid, abet, or assist another in the commission of a crime that the principal had no idea he was about to commit.''

In 26 American Jurisprudence, p. 199, § 59, the text writer in discussing ''Accessory. Before the Fact in manslaughter'' says: ''Manslaughter may result from the doing of an unlawful act or as the result of gross negligence in the performance of an act otherwise lawful, consequently, one who procures another to use a dangerous agency which causes death may be guilty as accessory before the fact.'' In support of the text, there is cited the case of *State of Rhode Island* v. *George W. McVay, et al.*, 47 R. I. 292, 132 Atl. 436, 44 A. L. R. 572, from the Rhode Island Supreme Court, in which it was held that one may be guilty as accessory before the fact to the crime of involuntary manslaughter, and in the opinion it is said: ''Manslaughter may consist, among other things, of doing an unlawful act resulting in unintentional killing, such as violation of motor vehicle laws'' . . . ''Malice, in its legal sense, may exist without actual intention of any mischief if the killing is the actual consequence of careless action.''

We think the jury would have been warranted in finding from all the facts and circumstances presented that the truck in question belonged to appellant; that he was on the front seat at the time of the collision, and that if not actually driving, was sitting beside the person who might have been driving; that appellant was not so drunk, but that he knew what was happening, knew that the truck, a dangerous instrumentality, was being driven on the wrong side of the road (§ 6714, Pope's Digest) in an unlawful manner, and was, therefore, an accessory and punishable as principal.

"On the trial of an accessory, whether the testimony as to the accessory's knowledge of the principal's offense is sufficient to justify a conviction is a question for the jury." 23 C. J. S., p. 621, § 1125. We think, therefore, that the court committed no error in giving instruction No. 8.

Appellant's instruction No. 2, as modified, is as follows: "The mere fact that you find beyond a reasonable doubt from the evidence in this case that Chester Fitzhugh was riding in the truck that collided with the Forthman car, which resulted in the death of Mr. Forthman, that in itself is not sufficient to convict the defendant, but you must further find beyond a reasonable doubt that the defendant was driving the truck in an unlawful or drunken and intoxicated condition, or was standing by, aiding or abetting in the unlawful driving of the car, which caused or brought about the death of the said Mr. Forthman." Appellant says: "The defendant objects generally to the action of the court in modifying his said instruction No. 2 by striking out the word 'manner' following the word 'intoxicated' in the seventh line of said instruction, and substituting in its place the words 'condition, or was standing by, aiding or abetting in the unlawful driving of the car'." We think there was no error in modifying the instruction and giving it as modified. What we have just said in regard to instruction No. 8 applies as to this instruction.

Appellant's requested instruction No. 3, which the court refused to give, is as follows: "You are instructed that unless you believe beyond a reasonable doubt that the defendant, Chester Fitzhugh, was driving the truck which collided with the car driven by the said Forthman, at the time of this alleged collision, and which resulted in the death of the said Forthman, it will be your duty to find the defendant not guilty." We think the court was correct in refusing to give this instruction for the reason that this instruction required the jury to find that appellant must have been actually driving the truck at the time it collided with the car driven by Mr. Forthman before they could convict him. This instruction was

clearly in conflict with instructions Nos. 8 and No. 2, *supra,* and properly refused.

Appellant's requested instruction No. 4, which was refused, is as follows: "You are instructed that if any of the instructions given by the court, if there is no evidence, direct or circumstantial, upon which to base that instruction, then in that event you will disregard that instruction." The effect of this instruction is to tell the jury to disregard any abstract instruction, or any instruction, given, without evidence to support it. Since we find that all the instructions given related to some issue and were properly given, the court did not err in refusing this instruction.

Finally, appellant contends that the official court reporter, Mrs. Frances Copeland, grossly overcharged him for her services in preparing the bill of exceptions. He asks that we determine what fees or charges the reporter is entitled to receive for her services in this connection. We cannot decide this question here for the reason that Mrs. Copeland is not a party to this suit.

Finding no error, the judgment is affirmed.