# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DALSHONE MARCUS JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 319015
Wayne Circuit Court
LC No. 13-005854-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARCUS LANNELL RELERFORD,

        Defendant-Appellant.

No. 319060
Wayne Circuit Court
LC No. 13-004693-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DALSHONE MARCUS JOHNSON,

        Defendant-Appellant.

No. 319063
Wayne Circuit Court
LC No. 13-004693-FC

---

Before: M. J. KELLY, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM.

        Defendants Dalshone Johnson and Marcus Relerford appeal by right their convictions after a joint trial before a jury with charges from two separate cases that were consolidated for trial. In LC No. 13-005854-FC, the jury convicted Johnson of first-degree murder, MCL

-1-

750.316(1)(b), armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In LC No. 13-004693-FC, the jury convicted Johnson of two counts of armed robbery, carrying a concealed weapon, MCL 750.227, and felony-firearm. The jury acquitted Relerford of all charges in LC No. 13-005854-FC, but convicted him of two counts of armed robbery in LC No. 13-004693-FC. In the first case, the trial court sentenced Johnson to serve concurrent terms of life imprisonment without parole for the murder conviction and 285 months to 48 years in prison for the robbery conviction. The court sentenced him to serve a consecutive two-year prison term for the felony-firearm conviction. In the second case, the trial court sentenced Johnson to serve 180 to 360 months in prison for each robbery conviction, to serve 24 to 60 months in prison for the carrying a concealed weapon conviction, and to serve a consecutive two-year term of imprisonment for the felony-firearm conviction. The court sentenced Relerford to concurrent prison terms of 18 years and 6 months to 40 years for each robbery conviction. Because we conclude there were no errors warranting relief, we affirm in each docket.

## I. BASIC FACTS

The charges at issue arose from two separate criminal episodes that occurred within an hour of each other in the same Detroit neighborhood in May 2013.

The prosecutor presented evidence that at approximately 1:00 a.m., Johnson and Relerford robbed Chantell Stevenson and Danikia Harper outside a liquor store. After Relerford pulled his white SUV alongside Stevenson's car, Johnson left the SUV, got into Stevenson's backseat, threatened the sisters with a .45 caliber handgun, and stole their belongings. Johnson then got back into the SUV and Relerford drove off.

Approximately 45 minutes later, while Johnson was standing outside his residence, a witness saw him staring at Dallas Allen, who was walking down the street listening to music on a cell phone. Johnson ran into his house, emerged with a handgun, and headed directly toward Allen. After hearing two gunshots, another witness saw Johnson fleeing the area where Allen had been shot. Allen's two cell phones were missing, and two .45 caliber shell casings were found near his body. Later that day, Stevenson recognized Johnson and Relerford in the neighborhood, called the police department, and police officers later arrested them at Johnson's residence. Allen's two missing cell phones were found in the backyard and the white SUV was parked in the driveway.

Johnson and Relerford now appeal in this Court.

## II. JOHNSON'S APPEAL IN DOCKET NOS. 308101 & 309063

## A. SUFFICIENCY OF THE EVIDENCE

Johnson first argues that this Court must vacate his convictions for first-degree felony murder, armed robbery, and felony firearm arising from Allen's death because the prosecution failed to present sufficient evidence to establish that Allen was killed as part of a robbery. In reviewing a challenge to the sufficiency of the evidence, this Court views the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440

Mich 508, 515; 489 NW2d 748 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

In order to establish that Johnson committed felony murder, in relevant part, the prosecutor had to prove that Johnson killed Allen while committing or attempting to commit robbery. MCL 750.316(1)(b); *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). As relevant here, the elements of armed robbery include that Johnson used force or violence against Allen and possessed a dangerous weapon in the course of committing a larceny. *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007). "[T]he specific intent necessary to commit larceny is the intent to steal another person's property." *People v Cain*, 238 Mich App 95, 120; 605 NW2d 28 (1999). The felony-murder doctrine does not apply if the intent to steal the victim's property was not formed until after the homicide. *People v Brannon*, 194 Mich App 121, 125; 486 NW2d 83 (1992). However, "a murder committed during the unbroken chain of events surrounding the predicate felony is committed 'in the perpetration of' that felony[.]" *People v Gillis*, 474 Mich 105, 121; 712 NW2d 419 (2006) (citation omitted). The murder and the felony need not be contemporaneous; rather, the defendant need only have intended to commit the underlying felony when the homicide occurred. *Brannon*, 194 Mich App at 125. Because of the difficulty inherent in proving an actor's state of mind, "minimal circumstantial evidence will suffice to establish the defendant's state of mind." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Johnson killed Allen with a firearm during the course of an armed robbery. There was evidence that less than an hour before Allen was shot, Johnson robbed Stevenson and Harper; during that robbery, he told them that he did "this," meaning robbery, for a living. Shortly thereafter, a witness saw Johnson staring at Allen as he walked down the street while using a cell phone to listen to music. There was evidence that Allen carried multiple phones with him, two of which were government-issued cell phones with prepaid-minutes. The testimony established that Johnson retrieved a gun and then approached Allen. Johnson was then seen fleeing from the scene approximately 10 seconds after the gunshots were fired, and Allen's two cell phones (with the prepaid minutes) were missing. Allen's cells phones were later found in the backyard of a house where Johnson was present. From this evidence, a jury could reasonably conclude that Johnson targeted Allen for a robbery after he saw Allen's exposed cell phone and retrieved his handgun and approached Allen for that purpose. Consequently, there was sufficient evidence to support the jury's verdict that Johnson killed Allen during the commission of an armed robbery and that he had the requisite intent.

## B. JOINDER

Johnson next argues the trial court erred in granting the prosecution's motion to join his two cases for one trial under MCR 6.120(B)(1)(c). Whether joinder is appropriate is a mixed question of fact and law. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *Id.* This Court reviews the trial court's factual findings for clear error and its interpretation of the court rule, which is a question of law, de novo. *Id.* However, the trial court's ultimate decision

on permissive joinder of related charges lies "firmly within the discretion of trial courts." *People v Breidenbach*, 489 Mich 1, 14; 798 NW2d 738 (2011).

A trial court may join "offenses charged in two or more informations or indictments against a single defendant . . . when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B). Joinder is appropriate when the "offenses are related," which, in relevant part, means "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1). When considering a motion for joinder, courts should consider other factors including "the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial." MCR 6.120(B)(2).

Our Supreme Court has stated that offenses are "related" for purposes of joinder under MCR 6.120(B)(1)(c) when the evidence indicates that the "defendant engaged in ongoing acts constituting parts of his overall scheme or plan." *Williams*, 483 Mich at 235. Here, the evidence indicated that Johnson engaged in ongoing acts related to an overall scheme of robbing persons with a handgun on the same night and in the same geographic area. The separate robberies occurred within a half mile of each other, within a one-hour time span, and shared a similar motive, i.e., to commit larceny. In addition, evidence relevant to Johnson's identity and intent in the robbery and murder of Allen was intertwined with the evidence from the prior robberies. There was also little potential for confusion because the two cases were presented distinctively, and the facts were not complex. Because the evidence shows that Johnson used a common scheme or plan, the same evidence would have been admissible in separate trials. *Id.* at 237 ("The admissibility of evidence in other trials is an important consideration because '[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial.' "). Thus, even if it were error to join the cases, Johnson has not established prejudice.

The trial court did not abuse its discretion in joining the offenses for trial and, even if it were error to join the trials, that error would not warrant relief.

## C. PRELIMINARY INSTRUCTION

Johnson's last argument is that the trial court erred when it gave the jury a preliminary jury instruction, which preemptively foreclosed the jury's opportunity to later rehear any testimony or review any transcripts. Because he did not object to the instruction, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

As a preliminary instruction, the trial court warned the jury to pay close attention to the witnesses' testimony because transcripts would not be available for months:

> [S]ometimes people think that at the end of the day we have written transcripts that can be reviewed. But that isn't true. Those written transcripts won't be available for months after this trial is over. So, because we don't have those

written transcripts, it's even more important that you pay attention and that you listen carefully to the evidence that will be presented.

Although the trial court mitigated the instruction by indicating that it would provide the jury with alternatives should the jurors have difficulty recollecting the testimony later, the trial court's instruction that the transcripts would not be available for months may have gone too far by giving the jury the impression that there was no possible way to review the transcripts during deliberations. *People v Carter*, 462 Mich 206, 213 n 10; 612 NW2d 144 (2000); see also MCR 2.513(P) (providing trial court's with discretion to allow the jury to review testimony, but prohibiting the trial court from foreclosing the possibility of having testimony or evidence reviewed at a later time). Nevertheless, because the trial court did not entirely foreclose the possibility that the jury might review testimony in some manner other than through transcripts, we cannot conclude that the trial court's instruction amounted to plain error; similarly, given the overwhelming evidence against Johnson, even if it were plain error, that error would not warrant relief. *Carines*, 460 Mich at 763. We would, however, caution the trial court from giving a similar instruction in the future because it invites a claim of error.

## III.  RELERFORD'S APPEAL IN DOCKET NO. 319060

### A.  PRELIMINARY INSTRUCTION

Relerford also challenges the trial court's preliminary instruction as impermissibly foreclosing the jury from requesting transcripts. Because he too failed to object before the trial court, our review is limited to plain error affecting his substantial rights. *Carines*, 460 Mich at 752-753. And for the same reasons we stated above, we conclude that the trial court did not plainly err and, even if it did, that error would not warrant relief. *Id.*

### B.  SUFFICIENCY OF THE EVIDENCE

Relerford also argues that there was insufficient evidence to support his convictions of armed robbery; specifically, he maintains that the prosecution failed to present any evidence that he shared or knew of Johnson's criminal intent to commit armed robbery.

At trial, the prosecutor advanced the theory that Relerford aided or abetted Johnson's armed robbery of Stevenson and Harper. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. In order to prevail on this theory, in relevant part, the prosecutor had to present evidence that Johnson robbed Stevenson and Harper, Relerford assisted in the robberies, and Relerford either intended to commit the robberies or knew that Johnson intended to commit the robberies at the time. *People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001). Aiding and abetting includes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. *Carines*, 460 Mich at 757; *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich at 757; *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010).

Viewed in a light most favorable to the prosecution, there was evidence that Johnson committed an armed robbery as to both victims. There was also evidence that Relerford assisted in the commission of the robberies by driving Johnson to the store, pulling up next to the victims' car to allow Johnson to quickly enter and exit, following Johnson's instructions concerning how to reposition the SUV after Johnson completed the robberies, and then serving as the getaway driver. Finally, the evidence was sufficient to show that Relerford provided the aid with the intent or knowledge that Johnson would commit the robberies. Relerford's conduct during the robberies, his later possession of items that were stolen from the victims, and the evidence of Relerford and Johnson's close and continued association 45 minutes after fleeing the robbery scene, and again 12 hours later, supports an inference that they were acting in concert to commit the crimes. Accordingly, the evidence was sufficient to support Relerford's convictions for armed robbery under an aiding and abetting theory.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Kurtis T. Wilder
/s/ Kirsten Frank Kelly

-6-