# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ASHLYN MELODIE DUPREE,

Defendant-Appellant.

UNPUBLISHED
July, 25, 2017

No. 332289
Ingham Circuit Court
LC No. 15-000473-FC

Before: SERVITTO, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted by a jury of armed robbery, MCL 750.529; unlawful imprisonment, MCL 750.349b; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. She was sentenced to concurrent prison terms of 72 to 180 months for armed robbery and 36 to 180 months for unlawful imprisonment, and to a consecutive 24 month term for felony-firearm. Defendant appeals as of right and argues that she is entitled to resentencing. For the reasons set forth in this opinion, we affirm the convictions and sentences of defendant.

## I. BACKGROUND

On May 1, 2015, defendant agreed to give the complainant a ride from Lansing to Detroit so that the complainant could go to work at a Detroit strip club. Defendant asked another friend, Chikara Mitchell, to accompany them. According to defendant, the complainant promised her $200 in exchange for the ride; the complainant recalled that she agreed to pay $200 if she made at least $500. The complainant made more than $300 that evening but considered it a "bad" night. She claimed she offered defendant $50 in exchange for the ride, whereas defendant claimed she was offered $20, which made her "angry." While in the parking lot of a strip club, defendant dragged the complainant out of the car by her hair and hit her repeatedly in the head or face until she protested that she was pregnant, and defendant stopped. The complainant eventually got back in the vehicle with defendant. She claimed that defendant then engaged the child lock on her door and refused to let her out, and that defendant had taken her cell phone. Defendant admitted that she took the phone and threw it out the car window while she was driving back to Lansing because the complainant continued to refuse to give her the money to which she felt entitled. On the way to Lansing, defendant called her boyfriend, Devonte Johnson. When they arrived in Lansing, defendant slowed the car down long enough to let

-1-

Mitchell out at her vehicle but then drove herself and the complainant to a church parking lot where they were met by Johnson, who was carrying a gun. Johnson told the complainant to get out of the backseat and into the front seat, where he pointed a gun at her head and asked her where the money was, while defendant looked through her belongings—a purse and a suitcase—for her money. Defendant claimed that she did not see the gun or know that Johnson was carrying one at this point. Before defendant located the complainant's money, Johnson fired the gun once. According to defendant, she was "scared" when Johnson fired the gun, but she kept looking for the money until she located it in the shorts that the complainant was wearing. Defendant took all of the money that she found and then left the complainant in the parking lot and drove away with Johnson and the rest of the complainant's belongings. Defendant was found guilty and sentenced as noted above. This appeal then ensued.

## II. NEW TRIAL

Following sentencing, defendant filed a motion in the trial court for new trial or reinstatement of plea offer. In her motion, defendant argued that her trial counsel had encouraged her to reject a plea offer of attempted armed robbery and dismissal of the unlawful imprisonment charge. According to defendant, trial counsel told her that she would be "crazy" to accept the offer because he could get her a better deal, and because she could not be convicted of armed robbery since she did not have possession of a gun during the commission of the offense. According to defendant, based on this advice, defendant chose to proceed to trial. Defendant argued that if she had been aware that she could have been convicted of armed robbery as an aider and abettor, and of the sentencing guidelines for that offense, she would have accepted the plea offer. The trial court denied defendant's motion, noting that defendant had not been offered the plea deal she described. Rather, the prosecutor offered to allow defendant to plead to assault with intent to rob while armed. Thus, the court could not reinstate the plea deal described by defendant.

Defendant filed a motion for reconsideration, asserting that defense counsel had committed palpable error in her motion for new trial when he had erroneously told the court that the premise of the motion was the terms of the plea deal. In fact, according to defendant, the "real issue" was whether she had rejected the plea offer based on her mistaken belief, as a result of trial counsel's erroneous advice, that she could not be convicted of armed robbery because she did not possess a gun. The trial court agreed that if trial counsel advised defendant that she could not be convicted of armed robbery because only Johnson had possession of the gun, it was erroneous legal advice which constituted ineffective performance at the plea negotiation stage of representation. However, the court found that defendant had not shown a reasonable probability that the plea offer would have been presented to the Court, as required by *Lafler v Cooper*, 566 US 156, 163-164; 132 S Ct 1376; 182 L Ed 398 (2012). Additionally, the trial court found that the premise of defendant's motion for new trial was faulty for two reasons: first, a new trial is not an available remedy under *Lafler*; and second, the plea offer defendant asserted she would have accepted was never offered, and defendant had not indicated that she would have accepted the last offer made by the prosecutor. Further, the trial court explained that if it determined that the prosecution had to reoffer the last plea deal to defendant and she accepted the offer, the trial court "would have discretion to determine whether to vacate the convictions and resentence pursuant to the plea agreement, to vacate only some of the convictions and resentence accordingly, or to leave the convictions and sentence from trial undisturbed." The trial court

indicated that it would have chosen to allow defendant's convictions for armed robbery and unlawful imprisonment[1] to remain in place; therefore, "it would be futile and a poor use of judicial resources to hold an evidentiary hearing as to trial counsel's advice."

In *Lafler*, the Court stated that while "[d]efendants have a Sixth Amendment right to counsel . . . that extends to the plea-bargaining process," "[t]he question for this Court is how to apply *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 US at 162-163. To prevail on a claim of ineffective assistance of counsel, a defendant must meet two criteria: first, he must "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not performing as the 'Counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 US at 687. See also, *Hill v Lockhart*, 474 US 52, 57; 106 S Ct 366, 88 L Ed 2d 203 (1985). Second, the defendant must show that the deficient performance was prejudicial. *Id*. Prejudice is established where there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at 694; *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 566 US at 163. Additionally, where the ineffective advice of counsel leads a defendant to reject a plea and proceed to trial,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 164.]

In the instant case, defendant has not shown that her initial characterization of the plea deal was supported by the record. Defendant claimed in her motion for new trial that the prosecutor had offered a plea to attempted armed robbery and to dismiss the unlawful imprisonment charge. However, the prosecutor did not offer this plea, but rather initially offered a reduced minimum sentence of 24 months for the armed robbery charge, a significant reduction from defendant's sentencing guidelines range of 45 to75 months. Subsequently, the prosecutor offered to allow defendant to plead guilty to assault with intent to rob while armed; although the sentencing guidelines for this offense were similar to those for armed robbery, assault with intent to rob while armed would have allowed defense counsel to argue for probation. Because defendant was not offered the plea deal she says she was encouraged to reject, she cannot show that defense counsel was ineffective for advising her not to accept a plea that was never offered.

We are also not persuaded by defendant's contention that she is entitled to a new trial based on "the real issue" from her motion for new trial, which was not the terms of the plea

---

[1] Defendant had not yet been charged with felony-firearm when the plea offers were originally extended.

offer, but whether she had rejected it based on trial counsel's erroneous advice that she could not be convicted of armed robbery because she did not have possession of the gun during the commission of the offense. Under *Lafler*, even if defense counsel wrongly advised defendant, she still would not be entitled to a new trial.

In *Lafler*, the Court stated that where a defendant declined a plea offer as a result of ineffective assistance of counsel and then received a greater sentence as a result of trial, the appropriate remedy depends upon the specific type of injury:

> In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.
>
> In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed. [*Lafler*, 566 US at 170-171 (citations omitted).]

Although assault with intent to rob while armed carries similar penalties to armed robbery, see MCL 750.89 and MCL 750.529, the last-offered plea was not for the same charges as those defendant faced at trial. Thus, under *Lafler*, assuming defense counsel wrongly advised defendant, her remedy would not be a new trial, but the reoffer of the plea proposal. Had defendant accepted a reoffered plea proposal, the trial court would have discretion to decide "whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id.* at 171. The trial court stated that if defendant were to accept a reinstated plea offer, it "would choose the option of leaving the Armed Robbery and Unlawful Imprisonment convictions and sentence stand[ing] under all of the circumstances now known to the Court through the trial, the sentencing proceedings, and post-trial proceedings." Such a finding was within the principled range of outcomes under *Lafler*. See also, *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Accordingly, the trial court's denial of defendant's motion for a new trial ruling was not an abuse of the trial court's discretion. Defendant is not entitled to relief on this issue.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues next that the evidence was sufficient to convict her only of unlawful imprisonment, not armed robbery or felony-firearm.

"[T]he elements of armed robbery are (1) an assault, (2) a felonious taking of property from the victim's presence or person, and (3) while the defendant is armed with a weapon described in the statute." *People v Rodgers*, 248 Mich App 702, 707; 645 NW2d 294 (2001) (quotation marks and citation omitted). "The element regarding an assault is satisfied if the defendant committed an unlawful act which placed another in reasonable apprehension of receiving an immediate battery." *People v McConnell*, 124 Mich App 672, 678; 335 NW2d 226 (1983).

Defendant was charged with armed robbery as an aider and abettor. Under MCL 767.39, a person who aids and abets the commission of an offense may be "prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." In order to prove that a defendant aided and abetted a crime,

> the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001).]

Our review of the record evidence in this matter leads us to conclude that the evidence presented was sufficient to prove that defendant was guilty of aiding and abetting armed robbery.

Defendant does not dispute that an armed robbery occurred. Rather her argument is premised on her assertion that she did not know Johnson had a gun during the robbery. Therefore she contends, without knowledge of a weapon prior to Johnson's discharge of the weapon, defendant could not have aided and abetted Johnson in the commission of armed robbery.

Our Supreme Court set forth the factors to consider when deciding whether sufficient evidence exists to support a conviction for an aider and abettor for armed robbery, stating:

> "[a]iding and abetting" describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. . . . An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999).

In this case, the record reveals that the crime was instigated and planned, at least in part, by defendant. Following her argument and altercation with the complainant, defendant called Johnson and they subsequently agreed to meet at the church parking lot. Additionally, there was evidence that Johnson and defendant had a long-term romantic relationship which produced three

-5-

children. Given the closeness of the parties and their long-term relationship, coupled with the evidence that defendant telephoned Johnson to set up the church parking lot meeting between the three, it was reasonable for the jury to find that defendant knew that Johnson possessed a gun and would bring one to their arranged meeting. Clearly, the jury was not persuaded by defendant's testimony that her only purpose in calling him was to have him act as a "mediator" in the dispute, in part because defendant's own testimony belied this assertion. Defendant testified that when she arrived at the church and made contact with Johnson, he "opened the back door from where [the complainant] was and told her to sit in the front seat. So as that's happening, I'm coming around to the car and started going through her bag." Defendant did not explain why the complainant would comply with Johnson's commands or why she would have allowed defendant to rifle through her belongings. It was reasonable for the jury to determine that the complainant did so because Johnson was holding her at gunpoint, as she testified, and that defendant not only was aware of this fact but relied on Johnson's possession and use of the gun in order to search for the money without resistance.

Defendant's assertion that the trial testimony did not tend to show that she was aware that Johnson had a gun is without merit. Defendant's testimony made clear that she was able to go through the complainant's belongings without resistance. The jury could have inferred that was only possible because defendant was aware that Johnson had a gun pointed at the complainant. The complainant testified that when they arrived at the church, she immediately saw that Johnson was holding a gun, and the jury may have concluded that defendant also was immediately aware of the gun. In addition, the complainant testified that while Johnson was pointing the gun at her head, defendant was saying to her, " 'Where is the money? Give him the money[.]' " Defendant's direction to give the money to Johnson suggests that she was aware that he had a gun or that his presence was intimidating for some other reason. It was reasonable for the jury to conclude, based on the unrefuted evidence, that Johnson did in fact have a gun, that defendant was aware of this fact before he fired it, and that she used that fact to attempt to intimidate the complainant into telling her where her money was kept. Even if we were to find that the above-cited evidence insufficient to prove defendant's knowledge of the gun, defendant fails to recognize that her testimony revealed that after Johnson fired the gun into the air, defendant continued to search for the money until she located it in the complainant's clothing. Thus, the testimony supported the jury's conclusion that defendant aided and abetted the armed robbery by encouraging Johnson's actions and relying on his possession and use of the gun to intimidate the complainant in order to take her property. Accordingly, defendant is not entitled to relief.

Defendant also argues that there was insufficient evidence to find her guilty of felony-firearm. In *People v Moore*, 470 Mich 56, 61; 679 NW2d 41 (2004), our Supreme Court stated that "[u]nder the aiding and abetting statute, MCL 767.39, the correct test for aiding and abetting felony-firearm in Michigan is whether the defendant 'procures, counsels, aids, or abets in [another carrying or having possession of a firearm during the commission or attempted commission of a felony].' " *Id.* at 70. Additionally, the Court stated:

> Establishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation,

and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. [*Id.* at 70-71 (citations omitted).]

The Court stated further that "when a defendant specifically encourages another possessing a gun during the commission of a felony to use that gun, he aids and abets the carrying or possessing of that gun just as surely as if he aided or abetted the principal in obtaining or retaining the gun." *Id.* at 71.

Here, the evidence revealed that defendant actively encouraged Johnson in the commission of felony-firearm by relying on his possession of the gun in order to intimidate or immobilize the complainant while she robbed her. Contrary to defendant's assertions, the prosecution was not required to show that she had asked Johnson to bring a gun to the church parking lot or that she had somehow encouraged him to bring a gun. Rather, the prosecution was required to show that defendant either "performed acts or gave encouragement that assisted in the commission of the felony-firearm violation"; "intended the commission of the felony-firearm violation"; or that she "had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *Moore*, 470 Mich at 70-71. Sufficient evidence was presented at trial for the jury to conclude that defendant intended for Johnson to bring a gun when she asked him to meet her at the church based on her behavior during the commission of the offense. Accordingly, defendant is not entitled to relief.

## IV. RESENTENCING

Finally, defendant argues that offense variable (OV) 19, MCL 777.49, was improperly scored at 10 points. Ten points may be scored for OV 19 where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). According to defendant, she was entitled to zero rather than 10 points for this variable because her score was based solely on judicial fact-finding. Defendant offers no further argument, and did not raise this issue before the trial court. We decline to review this issue, concluding that defendant has abandoned it. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give an issue only cursory treatment with little or no citation of supporting authority"); *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (recognizing that "[a]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue").

Affirmed.

/s/ Deborah A. Servitto
/s/ Christopher M. Murray
/s/ Stephen L. Borrello